# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | No. CR-05-768 TUC DCB (JM) |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Maritza Montoya-Samaniego, | ) | |
| Defendant. | ) | |

This matter was referred to Magistrate Judge Marshall for all pretrial matters. A Motion to Suppress Pursuant to Fourth Amendment [Doc. No. 17] filed by Defendant Maritza Montoya-Samaniego ("Montoya-Samaniego") on July 27, 2005, was heard by Magistrate Judge Marshall on August 26 and September 1, 2005. Montoya-Samaniego was present at the hearing and was represented by counsel. Two witnesses were presented by the Government: U.S. Border Patrol Agent Gerald Wilke and U.S. Drug Enforcement Agent Brian Miers. Four witnesses were presented by Montoya-Samaniego: Louie Tartaglia, Jr., a school teacher in Douglas, Arizona; Javier Madrid, a manager for Federal Express in Sierra Vista, Arizona; and private investigators Andrew Sowards and Randy Downer. The witnesses were examined, cross-examined, and questioned by the Court. Having considered the matter, the Magistrate Judge submits the following Findings of Fact and Conclusions of Law and recommends that Defendant Montoya-Samaniego's Motion to Suppress be denied.

## I. FINDINGS OF FACT

On March 19, 2005, the date of Defendant's stop and arrest, agents from the United States Border Patrol set-up check points on State Route 90, just north of Sierra

1  Vista/Huachuca City, Arizona, and on State Route 80, just north of Tombstone, Arizona.
2  (TR1:9-10).[1]  Border Patrol also set up a high intensity traffic interdiction ("HIT") zone just
3  to the west of McNeal, Arizona, near the intersection of Frontier Road and Davis Road.[2]
4  (TR1:17, 21).  HIT zones are areas that Border Patrol has identified as having "a high amount
5  of illegal aliens and narcotic trafficking."  In areas that are designated HIT zones, Agents set-
6  up signs indicating that it is a HIT zone and assign "agents to observe traffic and interdict
7  illegal traffic . . . ."  (TR1:20).

8        In an effort to interdict anybody that might try to circumvent the HIT zone at Davis
9  and Frontier Roads, Agent Wilke took up a position at the intersection of Central Highway
10 and Davis Road, just east of the HIT zone.  (TR1:22-23).  Central Highway begins at State
11 Route 80 about ½ mile north of the U.S./Mexico border and runs north/south beginning just
12 west of Douglas, Arizona.  (TR1:13; Exhibit 1).  The road, beginning at its most southern
13 point and going north for approximately six miles, is dirt and is surrounded by farm and
14 ranch land.  (TR1:16, 29).  The road then becomes paved and continues north for
15 approximately 9 miles.  (TR1:17).  At approximately 1:00 p.m. on March 19, Agent Wilke,
16 who was in a marked Border Patrol SUV, parked at the northeast corner of the intersection
17 facing southbound.  (TR1:24).  Agent Wilke described the traffic on Davis as "medium," and
18 the traffic on Central as "fairly light."  (TR1:27).

19       At approximately 1:51 p.m. that day, Agent Wilke was still parked at the intersection
20 and "observed a vehicle driven by a female pass by [the] location," and "appeared to be
21 following another darker colored pickup truck."  (TR1:27, 29).  The vehicles approached the
22 intersection from the south and, upon reaching the four-way stop at the intersection, turned
23 eastbound on Davis Road.  (TR1:30).  Agent Wilke did not notice anything that stood out

---

[1] "TR1" refers to the Transcript of Hearing on Motion to Suppress dated August 26, 2005, and filed with the Clerk on August 31, 2005.  "TR2" refers to the Transcript of Motion Hearing dated September 1, 2005, and filed with the Clerk on September 9, 2005.

[2] Davis Road begins just east of McNeal, Arizona, where it intersects State Route 191, and ends at State Route 80 south of Tombstone, Arizona.  (TR1:17).

2

about the truck; however, "many things" stood out about the second vehicle, which he described as a "mid-size sedan." (TR1:32, 41). Agent Wilke noted the direction from which it was coming (from the border) and the direction it was heading (toward State Route 91 and away from the border). (TR1:32). As the vehicle passed him, the driver did not look at or waive to Agent Wilke and she appeared nervous. (TR1:33; TR2:7). Based on the first letter of the license plate, Agent Wilke believed that the car was recently registered. (TR1:34-38). The vehicle appeared to be heavily weighted despite only carrying one passenger. (TR1:40; TR2:9-11). The rear bumper appeared to be "lower to the road than it . . . should have been for just one person in the vehicle . . . ." (TR1:40).

Agent Wilke then pulled in behind the vehicle and observed it for a short distance while considering what he had noticed. (TR1:42). Based on the factors, he decided to stop the vehicle, believing that "it could possibly be carrying some cargo, . . . either aliens or narcotics." (TR1:41). He performed the stop just west of State Route 191 on Davis Road, approximately a mile east of Central Highway. (TR1:42). Subsequently, 253.95 pounds of marijuana was found in the vehicle's trunk. (TR1:42).

## II. **CONCLUSIONS OF LAW**

Montoya-Samaniego moves to suppress the evidence seized following the unlawful stop of the vehicle she was driving, alleging that reasonable suspicion did not exist to support a lawful stop. The Fourth Amendment protects the right of the people to be secure in their person, houses, papers, and effects against unreasonable searches and seizures. *U.S. v. Hensley*, 469 U.S. 221, 226 (1985). In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that, consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances. The Court has held that law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *Hensley*, 469 U.S. at 226.

Reasonable suspicion exists when an officer is aware of specific articulable facts, that, together with rational inferences drawn from them, reasonably warrant a suspicion that the

person to be detained has committed or is about to commit a crime. *United States v. Cortez*, 449 U.S. 411, 416-18 (1981). When assessing the reasonableness of the police officer's actions, the court must consider the totality of the circumstances confronting the officer at the time of the stop. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). The articulable facts forming the basis of a reasonable suspicion must be measured against an objective reasonableness standard, not by the subjective impressions of a particular officer. *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1445 (9th Cir. 1994).

In this case, the court must ascertain whether the factors cited as giving rise to the stop describe "behavior that should excite the suspicion of a trained border patrol agent that criminal activity is afoot." *United States v. Rodriquez*, 976 F.2d 592, 594 (9th Cir. 1992). Agent Wilke identified seven factors which he considered in making the decision to stop the Defendant's car:

1. The driver was a young female who appeared stiff, avoided eye contact with the agent and did not acknowledge his presence (TR1:33);

2. The vehicle appeared to be traveling in tandem with another truck (TR1:30-31);

3. The stop was made just before the 3:00 p.m. shift-change (TR1:25-26);

4. The stop occurred near the border in an area notorious for drug smuggling and the care was traveling away from the border (TR1:39);

5. The car was traveling on a dirt road in a rural area where the majority of vehicles were trucks and SUVs driven by area ranchers (TR1:28);

6. The vehicle was an older model that was only recently registered (TR1:34-38);

7. The rear of the car was riding low (TR1:40; TR2:9-11).

The Government asserts that the Defendant's failure to make eye contact may be considered as a factor establishing reasonable suspicion. On this issue, the Ninth Circuit has noted "whether the contact is suspicious or not is highly subjective and must be evaluated in light of the circumstances of each case." *United States v. Montero-Camargo*, 208 F.3d 1122, 1136 (9th Cir. 2000) (en banc) (citation omitted); *see also Gonzalez-Rivera v. Immigration & Naturalization Service,* 22 F.3d 1441, 1446 (9th Cir.1994) (concluding that giving weight

to this factor would "put the officers in a classic 'heads I win, tails you lose' position and the driver, of course, can only lose.") (quoting *United States v. Lopez,* 564 F.2d 710, 712 (5th Cir.1977)). Here, the factor carries no weight. Louie Tartaglia, a former law enforcement officer and teacher of law enforcement careers at Douglas High School, testified that he does not waive or acknowledge agents when he sees them in the area. (TR2:36-37). Likewise, Javier Madrid, who lives in the area, when asked if he ever acknowledged the presence of Border Patrol Agents, stated, "Not really." (TR2:48). Even Agent Wilke recognized that drivers do not always look at agents when they pass their location. (TR2:7). Given the uniformity of this testimony, Montoya-Samaniego, by failing to acknowledge Agent Wilke, did nothing that could properly be considered in support of a finding of reasonable suspicion.

The second factor, that the vehicle appeared to be traveling in tandem with another truck, is also not persuasive in this case. While this factor can be a valid consideration, it is not entitled to consideration in this case. *United States v. Sharpe*, 470 U.S. 675, 682 n. 3 (1985) (vehicles traveling in tandem for 20 miles a factor supporting reasonable suspicion); *Montero-Camargo*, 208 F.3d at 1139; *see also United States v. Robert L.,* 874 F.2d 701, 704 (9th Cir.1989) ("This circuit has recognized that traveling in tandem can be indicative of illegal smuggling activity."). The evidence here establishes that Agent Wilke did not see the vehicles traveling any substantial distance together. The only evidence of tandem driving is that both vehicles turned right when they reached Davis Road. The Court does not believe this factor warrants suspicion of criminal activity.

The Government's argument that the stop occurred near the time of a shift change also is not persuasive in this case. Agent Wilke testified that he first saw the Defendant's vehicle at approximately 1:51 p.m., one hour and nine minutes prior to the 3:00 p.m shift change. (TR1:25, 27). Agent Wilke also testified that an increase in illegal activity occurred during the 90 minutes before and after shift changes. (TR1:25). However, the Court finds that, at least in this case, extending the window of presumed increased illegal activity beyond one-hour both before and after a shift change is excessive. The travel time from Davis Road to

the Border Patrol station is approximately 25 to 30 minutes. (TR1:70-71). Thus, allowing a one-hour window both before and after the shift change, agents have a 30 to 35 minute cushion between the time of the stop and the time they would need to leave the area in order to return to the Border Patrol station by the 3:00 p.m. shift change. As shift change times are generally known by smugglers and are not overlapping or staggered (TR1:70, 72), the Government has offered no rationale or documentary evidence to support the contention that the period of increased illegal activity should extend beyond the two-hour period surrounding the shift change.[3] As such, the Court finds no reason to extend the period beyond one-hour, a time frame which is consistent with other reported decisions on the issue. *See, e.g., United States v. Arvizu*, 534 U.S. 266, 269 (suspicious activity occurred approximately 45 minutes before 3:00 shift change); *Franco-Munoz*, 952 F.2d at 1056 (stop occurred approximately 45 minutes after the 4:00 p.m. shift change).

Factor four, the time of encounter and the proximity to the border, although wholly innocent standing alone, can support a finding of reasonable suspicion when considered with other factors. *See, e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-885 (1975) (identifying vehicle type and proximity to the border as factors in evaluating reasonable suspicion); *United States v. Franco-Munoz*, 952 F.2d 1055, 1057 (9th Cir. 1991) ("the facts used to establish 'reasonable suspicion' need not be inconsistent with innocence.")*overruled in part on other grounds by United States v. Montero-Camargo*, 208 F.3d 1122, 1130 (9th Cir. 2000). Here, the Defendant's vehicle was traveling approximately fifteen or sixteen miles north of the international border. This was a fair and reasonable consideration in making the stop. *See United States v. Diaz Juarez*, 299 F.3d 1138, 1140 (9th Cir. 2002) (suspect vehicle traveling five miles from border).

---

[3] Given that three shift changes occur during a 24-hour period, allowing one hour before and after shift changes results in six of those 24 hours being considered periods of increased activity. The addition of 30 minutes both before and after a shift change would increase the period from six hours, or 1/4 of each day, to nine hours, or over 1/3 of the day. At that point, this factor, at least under the facts of this case, reaches the point at which the suspicious activity can be so remote from the shift change that it is no longer compelling.

The fifth factor cited by Agent Wilke, that the car was traveling from a dirt section of Central Highway that is abutted by ranches and farms, and was not the type of vehicle usually traveling on that part of the road, is a reasonable consideration. The agent's testimony on this point was corroborated by Javier Madrid, a witness called by the defense, who testified that he lives near Central Highway and described the types of vehicles usually seen on the road:

> I would say trucks, the majority I'd say, ranchers, farmers, the local people in the area. That's what I would say, mostly. That's what you need to live out in that area.

(TR2:47). As such, this is another factor, albeit not dispositive, that Agent Wilke could reasonably consider. *See United States v. Ramirez-Lujan*, 976 F.2d 930 (5th Cir. 1992), *discussed in*, *United States v. Greene*, 826 F.Supp. 314 (D.Ariz. 1993) (traveling on an infrequently traveled unpaved or country road a factor supporting reasonable suspicion).

The sixth factor articulated by the Government is that the vehicle was an older model and, based on the license plate number, was only recently registered. The defense presented testimony suggesting that the first letter of the license plate was not necessarily indicative of when the vehicle was registered. (TR2:40-43). Nevertheless, Agent Wilke believed that the first letter on the license plate of the Defendant's vehicle was indicative of recent registration. There is no evidence that his belief was not in good faith and such a premise, whether accurate or not, can support reasonable suspicion. *United States v. Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999) (an erroneous license plate report, relied upon in good faith, may support founded suspicion). As such, this consideration was a proper factor cited in support of the stop.

The seventh and final factor that decidedly tips the scale in the Government's favor is the fact that the vehicle was riding low. Agent Wilke was unequivocal in his testimony on this point. Moreover, the defense investigators examined the vehicle and concluded that the combined weight of the driver and the marijuana load would have resulted in the car riding approximately 1 7/8 inches lower than when it was not loaded. (TR2:115). As

depicted in the photographs taken by the investigator, the reduction in space between the tire and wheel well when the car was weighted is noticeable. *Compare* Exhibit 7 *with* Exhibit 9. This factor is one that the Ninth Circuit has found significant in justifying an investigatory stop, *United States v. Franco-Munoz*, 952 F.2d 1055, 1057 (9th Cir.1991), and it is given great weight here. It is the one factor that most clearly supports a reasonable inference that the Defendant was involved in criminal activity.

Considering all the factors found reasonable– the proximity of the stop to the border, the type of vehicle and where it was traveling, the recent registration, and, in particular, that the vehicle was riding low – the court finds that sufficient articulable facts have been established to meet the reasonable suspicion test. *See Montero-Camargo*, 208 F.3d at 1130 (conduct entirely innocuous when viewed in isolation may justify stop if considered with other information or surrounding circumstances "tend to indicate criminal activity has occurred or is about to take place."); *Brignoni-Ponce*, 422 U.S. at 885 ("in all situations, the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling.").

**III.    RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Defendant Maritza Montoya-Samaniego's Motion to Suppress [Docket No. 17].

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR 05-768-TUC-DCB**.

DATED this 23rd day of September, 2005.

_____
Jacqueline Marshall
United States Magistrate Judge